IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JetEx, LLC, a Wyoming limited liability company; Arch Insurance Company, a Missouri corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>Ross Scottsdale, LLC d/b/a Scottsdale Air Center, a Delaware limited liability company,<br><br>    Defendant. | No. CV09-1561-PHX-NVW<br><br>**ORDER AND OPINION**<br><br>**[Re: Motion at Docket 60]** |

Before the Court is Plaintiffs' Motion for Summary Judgment. (Doc. 60.) The Court will deny the motion.

Plaintiff JetEx, LLC, owns a Cessna Citation 560 airplane, FAA registration number N990JH, and Plaintiff Arch Insurance Company insured this airplane. The Court will refer to JetEx and Arch Insurance collectively as "JetEx."

Defendant Scottsdale Air Center ("SAC") is a business operating at the Scottsdale Municipal Airport. Among other things, SAC provides a hangar, staging area, and parking for private jets. (Doc. 61 at 6.) This lawsuit is about damage to the airplane allegedly inflicted while it was in SAC's care.

The parties agree that, on November 7, 2008, a man named Jake Harouny flew JetEx's airplane from Salt Lake City to the Scottsdale Municipal Airport. Before that flight, Harouny

1  had arranged for SAC to take care of the airplane during his stay in Arizona. Therefore,
2  when Harouny arrived in Scottsdale, he taxied to SAC's facilities, shut off the engine, and
3  turned the airplane over to SAC. Certain SAC personnel then visually inspected the airplane
4  for damage. According to the inspection record, the only problem noted was a paint chip on
5  the left wing.

6  Sometime after this inspection, SAC towed the airplane to a parking location some
7  distance away from its main facilities. The next day, SAC towed the airplane to a hangar for
8  cleaning. Members of the cleaning crew found noticeable damage on the airplane's left
9  wing. Photographs submitted by JetEx (the authenticity of which SAC does not dispute for
10  purposes of this motion) show that the left wing suffered two substantial scratches, running
11  parallel to each other from the wing's leading edge along the underside. One scratch runs
12  all the way to the trailing edge and aileron. The other scratch does not seem to run that far,
13  but it appears to have left a noticeable gash about midway through its course. (*See* Docs. 66-
14  3, 66-4.) This damage rendered the plane no longer airworthy, requiring repairs paid for by
15  Arch Insurance.

16  JetEx claims that Harouny and others inspected the airplane before it left Salt Lake
17  City and noticed no damage at that time. Harouny also claims that he encountered nothing
18  at the Salt Lake City airport, in flight, or at the Scottsdale airport that could have caused such
19  damage. JetEx therefore sued SAC for negligent property damage (including through a *res
20  ipsa loquitur* theory) and for breach of an implied bailment-for-hire contract. JetEx has now
21  moved for summary judgment, seeking to

22  establish[] as a matter of law based on the uncontested evidence that a contract
    of bailment for hire existed between plaintiff and defendant, that the aircraft
23  was damaged while in the care, custody and control of the defendant pursuant
    to the bailment, and that the defendant is legally liable for the plaintiffs'
24  damages because it cannot produce any evidence to meet its burden of showing
25  that the damage was caused by something that occurred in spite of the
    defendant's reasonable care.
26
27  (Doc. 61 at 3.)
28  In response, SAC conceded for purposes of the motion that it and JetEx entered into

- 2 -

a bailment-for-hire relationship during the relevant time. SAC, however, offered evidence that, a few weeks before Harouny flew the airplane to Scottsdale, he flew the airplane to an airport in Mount Pleasant, Utah. That airport allegedly has a small parking ramp requiring a tight turn, and surrounding the parking ramp are green-colored steel fence posts. According to SAC,

> [a] chemical analysis has established that the green paint on these fence posts matches the green paint that was transferred to the damaged area on the aircraft. Furthermore, two of these fence posts lean at an angle consistent with a collision with the left wing as the aircraft moved in a parallel direction. Finally, and perhaps most important, the damage to the left wing area fits the profile of the fence posts (i.e., the imprint on a grill on the underside of the left wing area matches the size and shape of the fence posts).

(Doc. 71 at 2 (citations omitted).) SAC also argued that, even absent this evidence, it had raised a triable issue of fact through the testimony of its employees who were "'very adamant' that they 'didn't damage this aircraft,'" mostly because they did not believe that anything they did or any structures at the Scottsdale airport could have caused such damage. (*Id.* at 3.)

In reply, JetEx conceded that SAC's evidence from Mount Pleasant, Utah, raised a triable issue of fact, but JetEx nonetheless asked this court to "streamline the trial" by addressing whether there existed a bailment-for-hire between JetEx and SAC,[1] and whether SAC had met the degree of care required by the nature of the bailment. (Doc. 75 at 1.) Focusing on the degree of care question, Plaintiffs argued that if a bailee returns the bailor's goods with damage that did not exist at the beginning of the bailment, the bailee must rebut a strong presumption that its negligence caused the damage. JetEx then asserted, for example, "All the evidence taken in the case shows that Harouny delivered the aircraft to SAC in good condition and that the damage must have occurred during the bailment" (*id*. at 3), and "SAC has not provided a scintilla of evidence to show that the damage to the aircraft

---

[1] As stated above, SAC conceded this issue for purposes of summary judgment, but Plaintiffs apparently want the Court to rule on it for all purposes.

- 3 -

was due to some cause other than its own negligence" (*id*. at 4).

The problem with JetEx's reply argument is that (as JetEx conceded earlier in its brief) SAC has provided more than "a scintilla of evidence to show that the damage to the aircraft was due to some cause other than its own negligence." Assuming SAC's evidence shows what SAC says it does — *e.g.*, that Harouny visited the Mount Pleasant airport, that the Mount Pleasant fence posts' paint and profile match the damage on the airplane, and that nothing at the Scottsdale airport fits the profile of the airplane damage — a reasonable jury could believe it and conclude that the damage at issue happened before the airplane arrived in Scottsdale. There would still be countervailing evidence — *e.g.*, Harouney's testimony that he thoroughly inspected the airplane before the trip to Scottsdale, SAC's arrival inspection records showing no more than a paint chip on the left wing — but resolving that conflict is the jury's role. And if the jury resolves it in favor of SAC, then the entire question of SAC's duties as a bailee becomes moot. Therefore, the Court sees no usefulness in deciding now, as a matter of law, whether SAC and JetEx had a bailment-for-hire relationship, and if so, whether SAC has sufficient evidence to show that it fulfilled its duty of care.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. 60) is DENIED.

DATED this 15th day of December 2010.

/S/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE